FILED
2021 AUG 10 AM 10:54
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARTHA ELLIS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SALT LAKE CITY CORP., BRIAN DALE, KARL LIEB, and ROBERT McMICKEN,<br><br>　　　　Defendants. | **ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER**<br><br>Case No. 2:17-cv-00245-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a Motion to Reconsider Order (ECF No. 98) filed by Plaintiff Martha Ellis ("Ellis"). Ellis moves the court to amend the portion of its prior Order (ECF No. 87) that dismissed her Equal Protection claim, brought under 42 U.S.C. § 1983 (her Fourth Cause of Action), insofar as it was premised on her 2016 demotion from Battalion Chief to Captain. She urges the court to reinstate the claim. For the reasons set forth herein, the court GRANTS Ellis's Motion.

## BACKGROUND AND PROCEDURAL HISTORY[1]

### I.  Ellis's Exemplary Career

Ellis resides in Salt Lake County, Utah. She had an exemplary career as a firefighter. She was employed by the Salt Lake City Fire Department ("SLCFD" or "Fire Department") for twenty-

---

[1] The court recited these facts in its prior order. *See* ECF No. 87 at 2–10.

two years until Defendant Salt Lake City Corp. ("the City") terminated her employment on or about March 17, 2017. Ellis served as a Battalion Chief for seven years, from May 7, 2009 to May 2016. As Battalion Chief, Ellis held the position of Fire Marshall from May 7, 2009 through October 17, 2014. She then held the position of Division Chief of Logistics and Emergency Manager and Fire Intelligence Liaison Officer from October 2014 to May 2016. Ellis was the first and only woman to attain the rank of chief officer with the SLCFD. She was also the most decorated female in the Fire Department, receiving a Golden Spanner Award in 1996, a Chief's Certificate of Merit in 2005 and the Chief's Recognition Medal in 2011. Ellis holds a Master's Degree from the Naval Postgraduate School and earned a fellowship to Harvard University's Senior Executives in State and Local Government Program.

## II.     Initial Failure to Promote and Report of Discrimination[2]

In 2009, when Ellis was ranked Battalion Chief and held the position of Fire Marshal, Ellis applied for a Deputy Chief position, which was just one rank above Battalion Chief. Fire Chief Kurt Cook ("Cook" or "Chief Cook") passed her over for the promotion. Instead Defendants Karl Lieb ("Lieb") and Brian Dale ("Dale"), fellow SLCFD Battalion Chiefs and both men, were promoted. Ellis complained to Chief Cook because she felt they were less qualified than she. Chief Cook responded that he planned to elevate her position, the Fire Marshal position, to an executive position if he could find funding for a third Deputy Chief position. He then appointed Ellis to the Executive Team. However, when Ellis applied for the third Deputy Chief position in 2012, she

---

[2] These allegations are outside the four-year statute of limitations applied to § 1983 actions in the state of Utah, but are included for context. *See Sheets v. Salt Lake Cty.,* 45 F.3d 1383, 1387 (10th Cir. 1995) ("[A] four-year statute of limitations under Utah Code Ann. § 78–12–25(3) governs § 1983 actions."); *see also Houck v. City of Prairie Vill., Kan.*, 166 F.3d 1221 (10th Cir. 1998).

was not promoted. Instead, Cook promoted Dan Walker, a less-qualified male co-worker, over Ellis. Ellis complained to Chief Cook, who later admitted that he had decided to promote Walker over Ellis before the candidate interviews had been conducted. Ellis reported the discrimination to Melissa Green ("Green"), the City's Equal Employment Opportunity Program Manager in April 2012. The Deputy Chief position was then terminated and replaced with an equivalent position titled the Assistant Chief of Operations. The City chose Battalion Chief McCarty ("McCarty") over Ellis to fill the position. McCarty was sworn in on January 10, 2014.

### III. Written Warning in February 2014

On or about November 21, 2013, Chief Cook assigned Dale as Ellis's supervisor. The following month Dale held an "expectations meeting" with Ellis. He gave no indication that her job performance was in question, but suggested that she had been too aggressive in an email to the Department Head of Engineering and that she should not communicate to Chief Cook directly, but needed to communicate through him or Lieb. No other Battalion Chiefs, all men, were subject to the same policy. Also during that meeting, Dale made several derogatory comments. Dale suggested that Ellis "throw tampons" at her employees if they got "whiney"; Dale referred to other women in the Fire Department as "bitches" and called them "bitchy."

On January 10, 2014, Dale and Ellis had another meeting where they discussed Ellis's work and Dale's expectations. Dale gave no indication that Ellis's job performance was in question. However, during the meeting Dale made several additional comments that were derogatory, calling women "bitches" or "bitchy." He told Ellis that other female employees were on his "radar" and instructed Ellis to discipline a female subordinate more harshly than a male subordinate.

Shortly thereafter, Ellis left for the Naval Postgraduate School. On February 6, 2014 (within a week of Ellis's return), Dale issued Ellis a written warning. Dale claimed that during the

3

past three weeks (including the two weeks while Ellis was away at the Naval Postgraduate School), issues had been brought to his attention indicating that Ellis had violated department policies several months prior. Ellis did not receive any notice that her behavior was in question prior to her written warning. Her male colleagues often received prior warning. This was the first time that Ellis had ever been disciplined or written up in her entire tenure with the SLCFD. Dale made additional sexist remarks towards Ellis. Ellis rebuked Dale and complained to SLCFD Human Resources ("HR") representative Sykes. Sykes did not follow up with Dale.

Ellis was denied a meeting with Dale, Cook, Green, Sykes, and other HR representatives before her February 18, 2014 response to the written notice was due. In that response, Ellis noted that the written warning she received failed to comply with Salt Lake City disciplinary policies because she had not received prior notice of the conduct. She also discussed Dale's inappropriate comments and suggested that the warning was an effort by Dale and Lieb to continue to deny her promotions. She also noted that Sykes had been fully informed of Dale's comments but had failed to take action.

On February 25, 2014, Dale told Ellis that he would not rescind the warning. On or about March 5, 2014, Ellis met with Sykes to discuss Dale's behavior. Sykes did not take action or report Dale to the City. However, in a March 12, 2014 training meeting, Sykes emphasized the importance of documenting, counseling, and giving verbal warnings prior to written warnings. Sykes represented that only criminal conduct would warrant a written warning without a prior verbal warning.

IV. **Third Failure to Promote**

In September 2014, Ellis applied for a position as the Assistant Chief of Administration. Again, SLCFD passed over Ellis at the recommendation of Dale and Lieb. That position instead

4

went to a less experienced and less educated male co-worker, Rusty McMicken ("McMicken"). Ellis met with Cook, Dale, and Lieb to discuss their choice. They informed her that they did not hire her because she had not demonstrated sufficient humility during her interview and because she lacked experience. Ellis told Cook she believed that they were treating her unfairly because of her gender. Cook said that was "bullshit" and that she should stop trying to play the victim.

Immediately following McMicken's promotion, Ellis was removed from her position as the Fire Marshal and reassigned as Division Chief over Logistics. Practically speaking, the reassignment was a demotion. Additionally, rather than reporting to Dale, Ellis was now required to report to Assistant Chief McMicken who himself reported to Dale.

## V.     Charge of Discrimination and Subsequent Treatment

On November 25, 2014, Ellis filed a charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Ellis identified the above-mentioned instances of discrimination including: (1) Dale's sexist comments to Ellis and other women in the Fire Department; (2) Dale's written warning; and (3) Ellis's failure to receive promotions in 2012 and 2014. Ellis also reported that the Department had retaliated against her because she reported the gender discrimination to the City. The City became aware of the charge no later than January 26, 2015.

Ellis alleges that after filing her charge, she was denied professional growth and networking opportunities, her performance was unduly scrutinized, she was subjected to harsher discipline than her male counterparts, and her reputation suffered. In January, February, and March of 2015, McMicken, Lieb, and Dale excluded her from meetings, conferences, and other training programs that her peers attended. They also accused her of failing to complete tasks that she had

not been assigned. On March 16, 2015, Ellis amended her EEOC charge to include this subsequent treatment.

After her amendment, Ellis alleges that McMicken, Dale, and the Fire Department continued to discriminate and retaliate. They excluded her from conversations regarding areas within her purview, including the wildlands preparation project for wildfire season. McMicken prohibited Ellis from communicating with senior staff members but did not place similar restrictions on male Battalion Chiefs. Ellis was also prohibited from bringing support staff to meetings while other administrators, who were all men, were not.

On April 7, 2015, Cook announced his retirement effective April 30, 2015. On April 27, 2015, McMicken hand delivered to Ellis a Pre-Determination Hearing Notice informing her the department was considering disciplinary action ("April 27 Notice"). The notice was not preceded by any complaints of Ellis's performance. Ellis believed that the disciplinary action was fabricated to interfere with her possible promotion. On April 28, 2015, Ellis applied for the Chief position by submitting her application to Mayor Becker and his chief of staff, David Everett, and requesting a meeting. Everett responded that a new Fire Chief had already been selected and that "given [her] pending EEO claims . . . meeting with the Mayor directly is not advisable."

On May 4, 2015, Mayor Becker appointed Deputy Chief Dale as the new Fire Chief. Ellis alleges she was not considered because of her pending EEOC complaint. Although Dale's position as Deputy Chief was left open, Dale and Lieb chose to leave it vacant.

On May 5, 2015, Ellis had her predetermination hearing. McMicken was chosen to evaluate Ellis's response to the April 27 Notice even though he had been the one who charged her with misconduct. That same day, Ellis amended her EEOC complaint for a second time, including the April 27 Notice and describing the worsening treatment at work.

On June 4, 2015, Dale upheld the April 27 Notice and Ellis was suspended for two days without pay. Ellis timely appealed her suspension. It was considered and upheld by Lieb, one of the individuals cited in Ellis's internal complaint and in her EEOC charge.

## VI.  The City's Response

The City's counsel participated in the May 5, 2015 predetermination hearing. Although Ellis reported discrimination and harassment during that hearing, the City took no action in response. On March 17, 2015, Green responded to Ellis's February 2014 response to her written warning and informed Ellis that her allegations did not constitute violations of the City Harassment Prevention Policy. Ellis provided Green with additional information on May 22, 2015. On June 2, 2015, the Mayor issued a statement in an article on Ellis's case describing her claims as unfounded. In July 2015, Ellis provided additional information to Green.

Other individuals filed complaints on Ellis's behalf. On August 3, 2015, Union President Steve Hoffman filed a complaint with the City because he had heard Dale say multiple times in public forums that he did not like Ellis, that he thought she was a "bitch," and that he was going to hold her accountable. On August 31, 2015, Brittany Blair also reported to Green that Dale had called Ellis a bitch in a meeting. On September 1, 2015, Ellis participated in a seven-hour interview with Green. On October 20, 2015, Sarah Bohe, Ellis's office facilitator reported to Green that Dale had called Ellis a "fucking bitch." In November 2015, Green completed her investigation and found that Ellis's reports of gender discrimination and retaliation were unsubstantiated.

## VII.  Ellis's Demotion

Following the conclusion of the investigation, Dale, Lieb, and McMicken continued to direct critical and demeaning comments toward Ellis. Dale continued to refer to Ellis as a "fucking bitch." Dale and Lieb excluded Ellis from participating in an all-girls fire camp for the Girl Scouts

of Utah, even though Ellis sat on the board of the Girls Scouts of Utah. In November 2015, Dale's assistant accused Ellis of creating a hostile work environment. Also in November, Dale, Lieb, and McMicken tried to reassign one of Ellis's subordinates to a different Battalion Chief, instructing her not to inform Ellis of the change.

In January 2016, Ellis applied for a position as Operations Assistant Chief. McMicken, Lieb, and McCarty conducted the interviews. They passed over Ellis for promotion. That position instead went to a less-qualified male applicant who had completed no higher education.

On March 16, 2016, McMicken issued Ellis another Pre-Determination Hearing Notice ("March 16 Notice"), informing her that she was being placed on paid administrative leave while the City considered disciplinary action against her based on an alleged lack of engagement, lack of ownership of responsibility, inability to follow instructions, and lack of respect for the chain of command. Upon receipt of the notice, Ellis was escorted from the building in front of her coworkers and instructed not to speak with anyone about the disciplinary proceedings. False rumors started in the office that Ellis had been suspended due to substance abuse in her office.

Ellis requested a meeting with Mayor Biskupski on or about March 30, 2016. Ellis provided the mayor with details of the conduct by the Fire Department and by Green. Mayor Biskupski said she would have Julio Garcia, her director of Human Resources, investigate. Ellis gave Garcia audio recordings of Dale calling female employees "bitches" and "bitchy." On April 19, 2016, Garcia responded to Ellis and informed her via email that although the recordings included a tone and language that was inappropriate, there was no evidence that the action taken against her was retaliatory or based on her membership in a protected class.

On April 11, 2016, the City held Ellis's predetermination hearing regarding the March 16 Notice. McMicken and Lieb were present and acted as the deciding officials for the SLCFD. On

May 3, 2016, Lieb and McMicken upheld the March 16 Notice and demoted Ellis from Battalion Chief to Captain.

On or about May 27, 2016, Chief Dale announced his retirement effective October 1, 2016. On or about July 8, 2016, Ellis amended her EEOC Charge again. She reported that the City had passed her over for the January promotion, that Dale, Lieb, and McMicken continued to make disparaging comments and that the Department had discriminated against her by demoting her.

Following Ellis's demotion, the Fire Department offered Ellis two options: continue to work for McMicken or go back to Operations as a station captain at Fire Station 12. Ellis chose Operations even though Ellis had not served in Operations for over 13 years and thus had not received any training regarding fire ground tactics or using first responder equipment. Because of a hand injury, Ellis went on FMLA leave starting May 13, 2016. During her leave, Ellis fell into a clinical depression and entered into unpaid medical leave. During her leave, the City gave the Fire Station 12 position to another person. On January 11, 2017, Ellis filed her amended complaint in state court, initiating this proceeding.

## VIII. Termination

Ellis appealed her demotion to the Salt Lake City Civil Service Commission ("CSC"). The CSC held a two-day evidentiary hearing on February 1–2, 2017 and took the matter under advisement. During that period, Ellis requested additional unpaid leave. Instead the Fire Department ended Ellis's leave and told her to return to work on March 1, 2017, or face termination. Ellis asked the City to consider her mental and physical health. The Fire Department refused to grant her a further extension, requiring her to return to work immediately. The Department's refusal was contrary to how Cook and Dale had been treated during similar periods.

9

In light of the City's refusal to extend Ellis's unpaid leave, and its insistence that she return as a "swing" Captain, necessitating physical fitness, Ellis requested that she be placed in training and work part time. The City denied her request. She was given until March 8, 2017 to accept or decline. Ellis communicated with Lieb and the City regarding her requests for accommodation. On March 17, 2017, the City terminated her employment.

### IX. Civil Service Commission Hearings

On May 18, 2017, the CSC overturned Ellis's May 2016 demotion. The CSC found that the allegations used to justify the demotion were not sustained by the record and that they appeared to be an attempt to manufacture misconduct and to justify disciplinary action when there were no performance issues. Although the CSC overturned her demotion, the City refused to reinstate Ellis to her position.

### X. Procedural History

Ellis filed her initial complaint in state court on October 27, 2016. She amended her complaint in the same court on January 11, 2017. The City removed the case to this court on March 30, 2017. On April 21, 2017, Defendants filed a motion to dismiss Ellis's Title VII claims against the Fire Department and several individual defendants and to dismiss Ellis's Utah Protection of Public Employees Act claim. The court granted that motion on December 20, 2017. On January 22, 2018, Ellis filed a Second Amended Complaint. On February 5, 2018, Defendant Salt Lake City filed a motion to dismiss Plaintiff's first and second cause of action, which asserted violations of Title VII, and her sixth cause of action, which asserted violations of the Utah Open and Public Meetings Act. On August 14, 2018, the court granted in part and denied in part the motion to dismiss.

Ellis filed her Third Amended Complaint on October 31, 2018, asserting nine federal claims against the City, Dale, Lieb, and McMicken. Counts 1–3 assert violations of Title VII against the City and Counts 7–9 assert violations of the ADA. Counts 4–6 assert claims against the City for its alleged violations of the Equal Protection Clause under 42 U.S.C. § 1983: Count 4: Gender Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment; Count 5: Retaliation in Violation of the Equal Protection Clause of the Fourteenth Amendment; and Count 6: Hostile Work Environment Harassment in Violation of the Equal Protection Clause of the Fourteenth Amendment.[3]

On January 4, 2019, the City moved to dismiss Counts 4–6 of Ellis's Third Amended Complaint. *See* ECF No. 61. As a result, the court dismissed Ellis's Fifth Cause of Action but declined to dismiss her Sixth Cause of Action. And while it did not dismiss her entire Fourth Cause of Action, the court dismissed it insofar as it was premised on her May 2016 demotion. The court allowed Ellis's Fourth Cause of Action to proceed only insofar as it was based on three alleged instances in which she was denied promotion. *See* ECF No. 87 at 18–19. In the motion now before the court, Ellis requests that the court reinstate her Section 1983 claim for gender discrimination (Fourth Cause of Action) based on her 2016 demotion.

---

[3] These claims are identical to the claims brought by Ellis under Title VII. But Ellis can bring both claims, so long as she states a claim under § 1983. "If a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application." *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989).

## LEGAL STANDARD

**I.        Rule 12(b)(6) Standard**

Dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a plaintiff fails to state a claim upon which relief can be granted. When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). The complaint must allege more than labels or legal conclusions and its factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**II.       Standard for Reconsidering Prior Order**

While a motion for reconsideration is not "specifically provided for" in the Federal Rules of Civil Procedure, *see Lacefield v. Big Planet*, No. 2:06-CV-844 DB, 2008 WL 2661127, at *1 (D. Utah July 3, 2008), it is within this court's "discretion to revise [its] interlocutory orders prior to entry of final judgment." *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988); *see also* FED R. CIV. P. 54(b) (explaining that any non-final order "may be revised at any time before the entry of a judgment."). The court's previous Order dismissing Ellis's Section 1983 demotion claim was not a final judgment. Rather, it was an interlocutory order. Thus, the court construes Ellis's motion to reconsider as "an interlocutory motion invoking [this court's] general

discretionary authority to review and revise interlocutory rulings prior to the entry of final judgment." *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991).

## DISCUSSION

Ellis argues that the court erred in dismissing her Section 1983 claim for violation of the Equal Protection Clause (her Fourth Cause of Action) that was premised on her May 2016 demotion. Specifically, she argues that the court required her to plead the elements of a prima facie case in her Complaint and that this was in error. She further argues that even if it were necessary to allege a prima facie case in the complaint, she did so, and that the court misapplied the standard for a prima facie case of discriminatory demotion by requiring her to allege that she was replaced by a less qualified male colleague. The City responds that to prevail on an Equal Protection claim for discriminatory demotion, Ellis must show that she was treated differently from similarly situated employees. The City argues that she failed to do so because she failed to demonstrate how her demotion was related to her gender. The City further argues that the court was correct when it previously concluded that her demotions were "more appropriately characterized as Title VII claims for retaliation" than as Section 1983 employment discrimination claims.

The parties had not previously briefed the specific issue of Ellis's demotion and its viability as a Section 1983 claim. Having now been fully briefed on the issue, the court agrees with Ellis that it should amend its prior order and reinstate her Section 1983 claim insofar as it is premised on her demotion. As an initial matter, Ellis argues that she is not required to plead all the elements of a prima facie case of discriminatory demotion in order to survive a motion to dismiss. While this is true, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002), the court disagrees with Ellis's characterization of its prior order. The court did not require Ellis to plead with specificity every element of a prima facie case. Rather, as explained in the prior order, when faced

with a motion to dismiss, courts are to "examine the first step of the *McDonnell Douglas* framework: the elements [Ellis] would need to establish to prove a prima-facie case of gender discrimination." *Morman v. Campbell Cty. Mem'l. Hosp.*, 632 F. App'x. 927, 933 (10th Cir. 2015) (citation omitted). "That is the only way to assess if her claim is, in fact, plausible." *Id.* Thus, the court will look to the first step of the *McDonnell Douglas* framework in determining whether Ellis has stated a plausible claim for relief.

I.  **Elements of a Prima Facia Case of Discriminatory Demotion under Section 1983**

"The prima facie case is a flexible standard that may be modified to relate to different factual situations." *Randle v. City of Aurora*, 69 F.3d 441, 451 n.13 (10th Cir. 1995) (citation omitted). Upon examination of the cases cited by the parties, some tension exists as to the appropriate elements of a prima facie case of discriminatory demotion asserted under Section 1983. Ellis cites *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000) (citations omitted), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002), in which the Tenth Circuit declared that "[t]o establish a prima facie case of discriminatory demotion, [a] plaintiff must show (1) that he was within a protected group, (2) adversely affected by defendant's employment decision, (3) qualified for the position at issue, and (4) that the job from which he was demoted was not eliminated." While the suit in *Jones* was brought under Title VII, as this court noted in its prior order, the standard for liability for employment discrimination is the same under Title VII and Section 1983. *See Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991); *see also Randle v. City of Aurora*, 69 F.3d 441, 450 (10th Cir. 1995) ("[T]he City can be held liable for any impermissible employment decisions under §§ 1981 and 1983

14

pursuant to the *McDonnell Douglas* framework originally developed to determine the existence of intentional discrimination in violation of Title VII." (citations omitted)).[4]

The City, on the other hand, cites the Tenth Circuit's decision in *Morman* for the proposition that to successfully allege a prima facie case of discriminatory demotion under Section 1983, Ellis is required to allege that she was treated differently from similarly situated employees. In *Morman,* the plaintiff was an orthopedic surgeon who brought a Section 1983 Equal Protection claim against her employer, a public hospital. 632 F. App'x. at 928. She alleged that it "discriminated against her based on her gender by providing better facilities, compensation, assistance, equipment, and advertising to its three male orthopedic surgeons." *Id.* In considering her employer's motion to dismiss, the Tenth Circuit stated:

> [W]e need not decide the specific elements [the plaintiff] would need to prove to succeed at trial. Under any standard, to prevail on an equal-protection claim, she would need to show that she was treated differently than similarly situated employees . . . . Thus, to survive the motion to dismiss, Dr. Morman needed to plead a plausible claim that she was similarly situated to the male orthopedic surgeons. That she has failed to do."

*Id.* at 934–35.

These cases create some doubt as to whether a plaintiff asserting employment discrimination under Section 1983 must allege that she was treated differently from similarly situated employees. In other words, the issue presented here is whether courts evaluating Section 1983 employment discrimination cases may simply borrow the Title VII prima facie standard, or

---

[4] The *Randle* court applied a standard nearly identical to the one employed by the Court in *Jones* in a failure-to-promote case brought under Section 1983. *See Randle*, 69 F.3d at 451 n.13. Importantly, it did not require the plaintiff to show that she was treated differently from similarly situated employees.

15

whether they impose an additional requirement of disparate treatment. On the one hand, the *Randle* court did not impose this additional requirement; it simply borrowed the Title VII standard. 69 F.3d at 451 n.13. On the other hand, the *Morman* court did require an allegation of disparate treatment. 632 F. App'x. at 934–35.

For the following reasons, the court concludes that an allegation of disparate treatment is not required for a plaintiff to state a plausible claim for discriminatory demotion under Section 1983. While such a requirement has some intuitive appeal—a violation of the "Equal Protection" clause implies some unequal or differential treatment—the Tenth Circuit, as explained above, has long applied the *McDonnell Douglas* standard, borrowed from the Title VII context, to employment discrimination cases asserted under Section 1983. *See, e.g. Drake*, 927 F.2d at 1162; *Randle*, 69 F.3d at 451 n.13. This standard, as enumerated in *Jones*, does not require a specific showing, or in this case, allegation, that the plaintiff was treated differently from similarly situated employees. 203 F.3d at 753. *Morman* did not purport to overrule or alter this Tenth Circuit precedent. Furthermore, as an unpublished decision, *Morman* is nonbinding on this court; the decisions in *Randle*, *Drake,* and *Jones* are published and do bind the court. Thus, the court will look to the first step of the prima facie discriminatory demotion framework articulated in *Jones* to determine whether Ellis has stated a plausible claim for relief. [5]

---

[5] Ellis also argues that this court erred when it previously observed that Ellis's demotion is more properly characterized as a Title VII retaliation claim than as a Section 1983 discrimination claim. While the court did not explicitly dismiss Ellis's Section 1983 claim for discriminatory demotion on the grounds that it could *only* be asserted under Title VII, it includes this footnote to clarify this aspect of its prior order. The court made this observation—that her demotion supported a retaliation rather than discrimination claim—based on the close temporal proximity between Ellis's report of discrimination to Mayor Biskupski, on March 30, 2016, and then to the City's H.R. director, Julio Garcia, on April 8, 2016, and her demotion, which occurred on May 3, 2016. While it is true that Ellis may ultimately recover under a Title VII retaliation theory rather than

## II.     Ellis's Allegations

Here, Ellis has included sufficient factual allegations in her Complaint to state a plausible prima facie case of discriminatory demotion. First, she is a woman and is therefore within a protected group. Second, she alleges that she was adversely affected by the demotion because she lost rank and her pay was reduced. *See* ECF No. 54 at ¶131. Third, she alleges that she was qualified for the position from which she was demoted because she had held the position for seven years, had obtained postgraduate education, and had an exemplary employment record, including having won various awards. *See id.* at ¶¶ 20–26. Finally, it can be reasonably inferred from the Complaint that the City did not eliminate the position after Ellis was demoted from it. This is because Ellis alleges that the city improperly failed to reinstate her to her former position even after the Civil Service Commission overturned her demotion. *See id.* at ¶¶ 176–178. Accordingly, the court reinstates Ellis's Section 1983 claim for discriminatory demotion.

## III.    Ellis's Motion for Partial Summary Judgment

At the same time she filed the present motion to reconsider, Ellis also filed a Motion for Partial Summary Judgment, moving for summary judgment only as to her Section 1983

---

under a Section 1983 discrimination theory, at this stage, the same factual allegations may give rise to claims under both Section 1983 and Title VII. *See Notari v. Denver Water Dept.*, 971 F.2d 585, 587 (10th Cir. 1992) ("[T]he basis for a § 1983 claim is 'independent' from Title VII when it rests on substantive rights provisions outside Title VII—that is, when it rests on a constitutional right or a federal statutory right other than those created by Title VII. We emphasize that the basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII." (citation omitted)); *Arnett v. Davis Cty. Sch. Dist.*, 1993 WL 434053, at *2–4 (D. Utah April 5, 1993) (allowing Title VII retaliation claim and Section 1983 discrimination claim to proceed based on same factual allegations). Thus, the court clarifies that even if the demotion ultimately turns out to support a Title VII retaliation claim, that fact would not warrant dismissal of Ellis's Section 1983 claim for discriminatory demotion at this stage.

17

discriminatory demotion claim. Because the claim had been dismissed and not yet reinstated, the court struck the Motion as having been prematurely filed. *See* ECF No. 116. Because the court has reinstated Ellis's claim, Ellis may now re-file her Motion for Partial Summary Judgment.

## CONCLUSION AND ORDER

For the foregoing reasons, Ellis's Motion to Reconsider is GRANTED. The court REINSTATES her Fourth Cause of Action as it relates to her May 2016 demotion.

DATED August 10, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge